# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRENT HOILAND<br>8 State Avenue North West<br>Massillon, Ohio 44646 | ) CASE NO.:<br>)<br>) JUDGE: |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES** |
| v. | ) |
| NFM/WELDING ENGINEERS, INC.<br>577 Oberlin Road South West<br>Massillon, Ohio 44647 | ) **(Jury Demand endorsed Herein)** |
| **Serve also**:<br>Philip Roberson, Statutory Agent<br>577 Oberlin Road South West<br>Massillon, Ohio 44646 | |
| -and- | |
| MARC HINDLEY<br>10225 Wooster St NW,<br>Massillon, OH 44647 | |
| Defendants. | |

NOW COMES Plaintiff Brent Hoiland, by and through undersigned counsel, and, for his Complaint against Defendants, alleges and states as follows:

## PARTIES

1. Hoiland is an individual domiciled in the State of Ohio at 8 State Avenue North West, Massillon, Ohio 44646.

2. NFM/Welding Engineers, Inc. ("NFM") is a domestic corporation for profit that does business in the State of Ohio.

3. NFM is a "person" within the meaning of 29 § U.S.C. 215, 29 USC § 203(a).

4. Hindley is an apprentice supervisor for NFM.

5. At all times referenced herein, Hindley supervised and/or controlled employment of Hoiland with NFM and acted directly or indirectly in the interest of NFM in relation to its employees, including its day to day operations and respective compensation practices; therefore, Hindley is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d).

6. Hindley is a "person" within the meaning of 29 § U.S.C. 215, 29 USC § 203(a).

## PERSONAL JURISDICTION

7. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

8. Hoiland performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

9. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 United States Code section 1331 as Plaintiffs' principal claims for relief arise from a federal statute, namely the Fair Labor Standards Act of 1938 (as amended), 29 U.S.C. § 201, *et seq.* (the "FLSA"), and has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 United States Code section 1367 as such state law claims arise from the same case or controversy as Plaintiffs' federal claims.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Holy's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA"), and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

12. Venue is proper with this Court pursuant to 28 United States Code section 1391(b)(2) as the events that gave rise to Plaintiffs' claims for relief, namely Defendants' unlawful retaliation against Hoiland.

**FACTS**

13. Hoiland was initially hired by Defendant as a laborer on or about October 12, 2016.

14. Hoiland is not an attorney.

15. Hoiland has no formal legal training or experience.

16. Hoiland is not familiar with the requirements of federal and state wage laws beyond what he has read on the internet.

17. Approximately one to two months after Hoiland was initially hired, he was promoted to the position of apprentice level machinist.

18. At all times referenced herein, Hoiland was paid on an hourly basis for his work for NFM.

19. As an apprentice machinist, Hoiland was paid $16.50 per hour.

20. Hoiland was typically scheduled to work from 7:00am until 3:00pm.

21. At all times referenced herein, Hoiland used a punch card to report all his hours of work.

22. At all times referenced herein, Defendants deducted 30 minutes from Hoiland's daily hours for a lunch break. However, Hoiland only received a 24-minute lunch.

23. At all times referenced herein, Hoiland participated in NFM's apprenticeship program.

24. As part of his training program, Hoiland was required to report to training one day a week - typically on Tuesdays – for training.

25. Hoiland was required to participate in the training and could not opt-out of it.

26. During his "training," Hoiland performed all of his normal job duties as a machinist with some instruction and/or feedback.

27. The training Hoiland received was directly related to his primary job duties.

28. Hoiland was not permitted to clock in for his training time.

29. Hindley specifically told Hoiland that he was not to log in for training.

30. Hoiland was not paid for his training time.

31. At all times referenced herein, Hoiland reasonably believed that federal and state wage and hour laws required employers to pay employees for all hours worked.

32. Hoiland reasonably believed that NFM's practices with respect to lunch breaks and training time violated federal and state wage and hour laws.

33. In or around June of 2018, Hoiland reported his belief that NFM was violating federal and state wage and hour laws to NFM's human resources ("June Wage Complaint").

34. The June Wage Complaint was made on the good faith belief that Hoiland was not receiving his correct pay.

35. NFM was aware that Hoiland reported Pay Discrepancies.

36. Upon information and belief, Human Resources reported Hoiland's June Wage Complaint to Hindley.

37. As part of the June Wage Complaint, Hoiland informed his foremen/journeymen, Sean Page and Matt Hunter that if the pay discrepancies were not resolved he would need to call the US Department of Labor ("DOL").

38. When Hoiland informed Hunter and Page that he would potentially call the DOL, Page told Hoiland that "I would hate to see you get ran out of here for calling them" ("Termination Threat").

39. Upon information and belief, Page and/or Hunter reported Hoiland's intent to report wage violations to the DOL to Hindley.

40. Hoiland initially didn't file a complaint with the DOL because the Termination Threat made him fear for his job.

41. Following the June Wage Complaint, Hoiland continued to participate in unpaid training.

42. On or about September 7, 2018, Hoiland reported to Hindley that he believed NFM was legally obligated to pay him for his training time ("September Wage Complaint").

43. Hoiland made the September Wage Complaint on the good faith belief that he was not being paid properly.

44. NFM was aware that Hoiland made the September Wage Complaint.

45. On or about September 11, 2018, Hoiland was suddenly terminated from NFM.

46. Defendants refused to give Hoiland any reason for his termination besides stating that he was an at-will employee.

47. Subsequently, Defendants provided Hoiland with a termination notice that vaguely stated that Hoiland had allegedly demonstrated "an inability to willingly and/or successfully accept instructions given to you by both your foreman and your journeymen…" without providing any specifics.

48. Hoiland had received no documented discipline prior to his termination.

49. Hoiland was terminated approximately two days after making his protected September Wage Complaint.

50. Defendants retaliated against Hoiland for making protected wage complaints by terminating his employment with NFM.

51. As a result of Defendant's unlawful conduct, Hoiland suffered and will continue to suffer damages

**COUNT I: VIOLATION OF 29 U.S.C. § 215(A)(3) - UNLAWFUL RETALITION.**

52. Hoiland restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

53. Hoiland had an exemplary employment history with Defendants since beginning his employment with them.

54. Hoiland had never been subjected to any form of discipline during his employment with Defendants.

55. The FLSA, at 29 U.S.C. § 215(a)(3), makes it unlawful for an employer to retaliate against an employee who seeks to enforce her rights under the FLSA.

56. Hoiland was terminated only days after he made protected complaints under the FLSA.

57. Hoiland was terminated because he made protected complaints under the FLSA.

58. Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by taking adverse actions against Hoiland because he made protected complaints under the FLSA.

59. By reason of the foregoing acts of Defendants, Hoiland has suffered damages, including lost income. Hoiland is entitled to recover liquidated damages for these damages pursuant to the Fair Labor Standards Act.

60. Hoiland requests recovery of his attorney's fees and costs associated with this cause of action as provided by 29 U.S.C. § 216(b).

## COUNT III: RETALITION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.

61. Hoiland restates each and every prior paragraph of this Complaint as if it were fully restated herein.

62. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

63. Hoiland was terminated only days after he made protected complaints under the OMFWSA.

64. Hoiland was terminated because he made protected complaints under the OMFWSA.

65. Defendants' termination of Hoiland constitutes a retaliatory adverse action against Hoiland in violation of Article II, Section 34a of the Ohio Constitution.

66. By reason of the foregoing acts of Defendants, Hoiland has suffered economic damages and has suffered from emotional distress.

67. Hoiland is entitled to recover liquidated damages pursuant to Ohio law.

## DEMAND FOR RELIEF

WHEREFORE Plaintiff, Brent Hoiland, respectfully request relief against Defendants, jointly and severally, as set forth below:

(a) Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

(b) Issuing a declaratory judgment that the practices complained of herein are unlawful under the anti-retaliation provisions of FLSA, 29 U.S.C. §§ 216(b) and the Ohio Constitution;

(c) Providing all statutory relief permitted by Ohio R.C. § 2921.13 (G);

(d) Awarding pre-judgment and post-judgment interest as provided by law;

(e) Awarding reasonable attorneys' fees and costs; and

(f) Awarding such other and further relief that this Court deems appropriate.

>Respectfully submitted,
>
>*/s/ Chris P. Wido*
>Chris P. Wido (0090441)
>**THE SPITZ LAW FIRM, LLC**
>25200 Chagrin Boulevard, Suite 200
>Beachwood, Ohio 44122
>Phone: (216) 291-4744
>Fax:    (216) 291-5744
>Email: chris.wido@spitzlawfirm.com
>
>*Attorney for Plaintiff Brent Hoiland*

## JURY DEMAND

Plaintiff Brent Hoiland demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Chris P. Wido*
>Chris P. Wido (0090441)
>**THE SPITZ LAW FIRM, LLC**

8